All right, court is back in session. Okay, we'll call the next case. Case number 12-0130 in regards to the Estate of Raul and Mosquera. Alright, if both attorneys or the attorneys that are going to present are all argument, step up and identify yourselves for the record. Good morning. David Arena, law firm of DeMonte and Lezak for the Good morning. Good afternoon, Judge. Good afternoon, yes. Daniel Fumagalli for the Appellate. Alright, I don't know if you were here earlier, but each side will have approximately 15 minutes to present oral argument. From that, Mr. Arena, you may save up some time for rebuttal. I'll stay five minutes. Alright. May I proceed? Yes. May it please the court, my name is David Arena of DeMonte and Lezak and I represent the children of the decedent Alejandro Mosquera and Fernando Mosquera. There's two issues presented by this appeal. First, whether the trial court erred in dismissing Fernando Mosquera's claim for an adult dependent child award due to the fact that the court found that Fernando was past the age of majority at the time he was adjudicated disabled. The second issue is whether the trial court erred in dismissing Fernando Mosquera and Alejandro Mosquera's claim for constructive trust to be imposed over 50% of the decedent's life insurance policy premiums. Again, as the court found that Fernando and Alejandro were not minors on the date of the decedent's death. Justices, I argue that the trial court erred in dismissing Fernando's claim for an adult dependent child award because the probate act does not restrict such awards to those children who are adjudicated disabled prior to reaching the age of majority. It is undisputed that Fernando satisfies the requirements of the probate act to be entitled to such an award. Prior to the decedent's death, Fernando was adjudicated disabled and Fernando did not reside with the surviving spouse at the time of the decedent's death. Further, the trial court erred in dismissing Fernando and Alejandro's claim for a constructive trust to be imposed over the life insurance proceeds because the decedent was obligated to name Fernando and Alejandro as irrevocable 50% beneficiaries of his life insurance policy pursuant to a 1993 divorce decree. This divorce decree did not restrict their status as beneficiaries to only while they were minors. The trial court dismissal this claim sanctioned an injustice by allowing the decedent to circumvent the divorce decree. I have a brief statement of the facts relevant to this appeal. So he gets to be like 100 years old and the decedent is 80 years old. He still has to keep a life insurance policy for him? That's correct. Because of this divorce decree? Because of this divorce decree he was obligated to name them as irrevocable beneficiaries and therefore he needed to name them as beneficiaries and that was an irrevocable designation. Alright, well rather than go through the facts which we already are aware of refer us to the law that you're basing your argument on, specifically the one about whether there's an obligation to have an insurance policy on both of these children who are now long adults. We have a consent decree. It starts with that contract between the parties which was memorialized into a divorce judgment in the Maryland divorce decision. We have the case of IDS life insurance versus sellers. That's a first district case from 1988. And that case starts out significant here. When a marital settlement agreement requires an insurer to maintain a life insurance for the benefit of a particular beneficiary, that beneficiary has an equal right to the proceeds of the insurance policy against any other named beneficiary except one with a superior equitable right. In that decision, the IDS decision, the court looked at the marital settlement agreement and it required the agreement to identify the two children as irrevocable beneficiaries and the court found that this obligation did not end at emancipation. And taking your question further, Justice, if he's 100 years old and the children are 80 years old, they are irrevocable beneficiaries. In that court, the IDS court stated that if the parties intended to provide the decedent with the right to effectuate a change in a beneficiary following emancipation, they could have done so with a specific statement to that effect in a divorce decree. That statement was not present in the IDS case and it's not present in the divorce decree that we have at issue today. Did the court find that there was a superior equitable right in the second wife in this case? No. In fact, in none of the cases I've come across has the court said that. I mean in this case, did Judge Riley make that determination when he denied? Yes, because the case you cited is subject to someone having superior equitable rights. The administrator is the third wife. She's the third wife. Judge Riley didn't specifically say she had a superior equitable right. She was the main beneficiary. So it's not an equitable right. She had a right under the language. Would Judge Riley Would it be equitable to take out a policy in this situation where you have a third wife who then I think did they have a child together? They did have a child. And let's assume that she paid all the premiums on the policy. Would it be equitable to then award someone else as a 50% beneficiary on that same policy? If she took out the policy? No, if she's named as the beneficiary and paid all the premiums. No, it would not be equitable. If Raul Mascara, the decedent, took out that policy, then the children, as per the divorce plea, have the superior equitable right. The case The ample leaves point out in their briefs that they take the position that the IDS case is distinguishable because of the difference in the language in the divorce decree. They do point that out, but it is not distinguishable and I'll explain why. I think we're looking at between the Swash versus Swash decision, and I believe that's a 1984 First District case, and the IDS case. The difference in the facts is that the divorce decree we have at issue here today says that the ex-husband, here the decedent, was to name the minor children, Alejandro and Fernando, as irrevocable beneficiaries. The IDS case doesn't contain that language, minor children. If you go back to the Swash case, the Swash case does use the language minor children. However, the Swash case also adds a provision in that same paragraph during the pendency of the minority of the children. So the express language of that decision limits the obligation to name the beneficiaries just to the minority. That language is not contained in the divorce decree we have here today. I think we could agree that that's really the best, the clearest language. I'm sorry? I think we could agree that that's really the Swash case. But I think what we're going to hear from them when they stand up is that there's a difference between children and minor children, and if we don't rule that there's a difference, then is the word minor just superfluous? And are we supposed to interpret things to the extent that we're not going to decide that that language is superfluous? Well, I wouldn't say that the language is superfluous, but it was an adjective in our situation to identify the children. We have to remember that the children that I represent are children from the second marriage, and there was a child, Diego Mascara, from a first marriage. So it is possible that the reason why it was identified as minor children is for that reason. But also you have to look at Swash, and Swash doesn't create a rule of law that applies to all cases. The Swash court's decision is case specific. If you look at what the court did, it looked at that specific consent decree and looked to determine the intent of the parties in that case. And in that case, the court determined, based on the consent decree, that the reference to minor children was a specific reference to just the minority. Isn't that generally kind of the intent that's given to these kinds of agreements? That parties, when they divorce, agree to provisions for the children while they're minors. It's kind of a basic sort of premise. And that most, even parents that are not divorced, don't generally take on these kinds of obligations that you're suggesting be taken on in this case. That is, we provide for our children via life insurance policies until they die. It is possible, but it's not unusual. There's educational expenses for all their dependent children. And oftentimes isn't the, when you're negotiating a divorce settlement, isn't the inclusion of life insurance provision put there to fund the other obligations of the father, support obligations, college obligations, in case he passes? That that's what the life insurance policy is there for? It's possible, but there's no evidence here that that was the intent of these parties. There's sometimes insurance is provided in order to assure that the child support is being paid for. But this is a contract between the parties. They're free to contract any way they want. And further evidence of an intent in this situation that the language was not meant to restrict the obligation to the minority of the children, the next provision down in the consent decree, after the life insurance policy, deals with educational expenses. And the language specifically says that it says the decision is to pay college expenses of the minor children. That's on page A137 of the record. Well, minor children don't have college expenses. It's very unusual for a child to go to college prior to the age of 18. So that language, if we interpret the intent of the parties to mean minor child is limited to the minor child, that provision in the agreement would have, make no sense. It would be illogical. And that is evidence of an intent that the parties were referring to the minor children merely as what they were. They were minor children at the time the divorce decree was entered. And just like in the IDS case, this court said if the parties wanted to limit the obligation to the minority of the children, it could have done so. And the parties didn't in our case. They did in SLOSH very clearly limited it. Well, there is a difference in the language in the IDS case. It says defendants shall keep in full force and effect the life insurance he presently has with the two children as irrevocable beneficiaries there under. That's different than the language here. And there is no minor children term. I agree with you. And I think what you have to do then as SLOSH indicates is look to the agreement to determine what the intent of the parties are. And here, because the children are referred to as minor children throughout and not minor children sometimes and just children other times, because of the college provision, college expense provision, which would be rendered illogical if we interpret minor children to restrict it to the minority. And the fact that the consent decree here doesn't specifically contain the language that limits it, I believe the correct interpretation is that the Alejandro and Fernando have an equitable enforceable right to a constructive trust over the proceeds. The other issue that we're dealing with is the adult-dependent child award. And I believe that's a much simpler issue to address. We have a situation where Fernando, it's undisputed that Fernando satisfies the requirements as laid forth in the statute. He's already been adjudicated disabled and he doesn't reside with the surviving spouse on the date of death. In fact, he's institutionalized in Maryland right now. The Degner decision by this court, I believe, is instructive on that issue. Judge Riley took issue with the Degner decision and simply said that if Fernando was not adjudicated disabled prior to the age of majority, he's not entitled to adult disabled child award. What is the amount that you believe is required of the court? If we were to remand this, what is the amount that you believe that the adult child is entitled to? Well, I could say at the very least he's entitled to $10,000. I also think an evidentiary hearing needs to be... I thought it was now $13,000. My understanding is $10,000. I don't know where I got that $13,000. I believe there needs to be an evidentiary hearing for the court to make a determination. We've put forth evidence as to what his medical expenses were. For three months weren't they over $500,000, medical bills alone? Yes, they were substantial. But you're not suggesting that the court award that? No, I think the court has to do an analysis of the money in the estate and all these other factors. Sure. What Judge Riley did is he imposed a limitation on the award that doesn't exist in the statute and doesn't exist in case law. There's been no case law presented that would support that. And also, the Degner decision, the court at that time was looking to address whether the disabled child needed to be financially dependent on the decedent as the date of death. And the court said no. The court said it wasn't going to artificially limit the scope of the award. The court used some very strong language that if a child is an adult who is dependent, defined as being unable to maintain himself and likely to become a public charge, he must be given the requisite award under the statute. The Degner court recognized the legislator intended the child's award to be liberally given and that the award is in the nature of an entitlement and not to be rightly disregarded. That is instructive on this court. Fernando, and it's undisputed, he was adjudicated disabled prior to the death of the decedent and he doesn't reside with the surviving spouse. Those are the only two requirements necessary for Fernando to be entitled to such an award. Therefore, I request that the court remand. To bring you back to the first issue, if we put the children versus minor children issue aside for a second, can we talk about whether these benefits were available through his employment? Yes, Judge. There's evidence in the record and because we're dismissed on a 2-6-19 motion, the discovery hasn't been flushed out. There's evidence in the record. I believe that evidence is not properly before the court because it's not properly presented with an affidavit complying with Supreme Court Rule 191, but there's an indication that Dr. Mascara had not incorporated his medical practices until the following year that he obtained the life insurance policy. What I say to that is this is an equitable situation. Dr. Mascara, the decedent, had the obligation to identify his children as beneficiaries. He obtained the policy of insurance in his individual name, not through his employer. However, ultimately, when he established his medical practice, he was the sole shareholder of that practice and he had sole control over whether to provide the policy through his employer. In addition, it's undisputed. We know in the record right now that at least two of the premium payments were made in 2008 and the administrator attests in an affidavit in support of the motion to dismiss that all of the premium payments made in 2009 were made through the employer. I would say that because there was an obligation under the divorce decree and because the employer made significant amount of payments, that policy of insurance was available through the employer, specifically because it was the decedent who had the sole decision on whether to obtain that insurance. Fernando was a minor on the date the policy of insurance was acquired. Fernando was 17. Alejandro was 19. So at the very least, if the court was to accept the argument that it only applied to minor children and I'm not promoting that, Fernando still should have been named as a beneficiary. Anything further? No, I just ask that the court remand the case with instructions to award an adult disabled child's award and conduct an evidentiary hearing as to the amount of that award and the court reverse the decision of the trial court and impose a constructive trust over 50% of the insurance proceeds. Thank you. Fumagalli. Good afternoon again, Your Honors. My name is Daniel Fumagalli. I represent the appellee in this instance, in this case, Katie Mosquera, who is the supervised administrator of her husband's estate, her husband Raul's estate. We're here today because Judge Riley in the lower court, probate court, denied the petitioner's petition for a child award and on a 2619 motion dismissed the claim for insurance benefits that both Alejandro and Fernando had lodged. Obviously, we believe that Judge Riley was right in both instances and that his ruling should be affirmed. Let's start first with the child's award. I find this interesting from many perspectives. It's a section of the Probate Act that happens a lot. The child's award, spouse's awards, are granted on a routine or dealt with, anyway, on a routine basis. The only case on this issue, the only case on the adult-dependent child issue is Degner from 1987, a 25-year-old case that, guess what, hasn't been cited by one case, one appellate case, no appellate case has cited Degner in 25 years. Well, what case would you suggest changes the meaning of adult-dependent child that they had to be dependent at the time? I mean, what case would you cite to support your position? I wouldn't cite a case per se, Judge. I would cite the court to the statute, which is my next point. And we have a statute which is curiously worded. And then the third prong that I was going to get to is we have a very, I'll just use the word, unequivocal ruling from Judge Riley as to what his practice has been in the probate court as to the interpretation of this particular statute. Okay, well, what does the statute tell us that supports your position? The statute says at the beginning part, Judge, it talks about if a minor or adult-dependent child of the decedent does not reside with the surviving spouse, then they are entitled to an award. That award is a sum of money that the court deems reasonable for the proper support of the child for the period of nine months after the death of the decedent in a manner suited to the condition in life of the minor child. It does not say adult-dependent child. This is the wording of the statute 15-2A. For whatever it's worth, 15-2B was indignant. 15-2B does not have that language. There's no recitation in either of the briefs as to what the legislative history is, but I would submit to the court that a few things. It's clear from the reading of this statute, just the language of the statute, that there's an equivalency to minors and adult-dependent children. They are on the same footing. The court treats them in the same manner. And by the way, they are also treated in the same manner as spouses in that if there wasn't enough money in the estate to provide for all this stuff, they are each ratcheted down radibly, which is why the definition of adult-dependent child shouldn't be taken lightly. If they're equivalent, I interpret the later part of the statute, which again harps on the minor child, the condition in life of the minor child. And again, I can't point to either of the Justices in any particular case that says this. To me it infers, I think as Judge Riley was getting at, a continuation, a continuum that an adult-dependent child is a minor child whose dependency was created when he was in the minority. Well, you're adding a lot of words now, which we don't get to do. We don't get to add words to the statute to have it mean something. And why does the statute refer to adult- dependent children when they're not living with the parent? Because a lot of times it's more difficult to care for an adult-dependent child. That's why they don't live often with the family. It's the same provision, Judges, in 15.2b if they are living. But your interpretation is that they have to be come disabled as a child, otherwise they're not an adult-dependent child. Isn't that your position? It is, and it was Judge Riley's very clear decision. What is it based on? The language of the statute doesn't give us that. Dagner doesn't give us that. And what was the other thing? You're relying on what he says his practice has been? On a day-to-day basis, this crosses a probate judge's desk on a daily basis. But if I may, Judge, related to that also, emancipation becoming at age 18, emancipation, has to have some significance. And that's part of what Judge, and I'm not saying this court is bound by what Judge Riley said, I'm just saying it has some bearing on where we get to where we're at. That emancipation has significance. As he says, you get to break the plate and tell your kid he should go outside. Now you're saying you've thrown him out of the house or he's left on his own free will. Now all of a sudden he's back in upon your passing. Emancipation does make a difference. It makes a difference in the divorce context when you're talking about child support. And there are cases, one of the cases that Dagner referred to, relied upon, was Strom v. Strom, which is a divorce case. You know, the Probate Act does define dependent. It does. And it says it means a person who is unable to maintain himself and is likely to become a public charge. It defines dependent. It does not define adult. Yeah, well we can assume adult means something. And we know that he's a child of this man, the doctor, deceased, right? Absolutely. So the question is, is he a dependent? At least under the Probate Act that means a person who's unable to maintain himself and is likely to become a public charge. Judge, this was a petition. It would be the equivalent of a motion. It would be a judgment on the pleadings that was granted. So I mean, I can't go beyond. There were no facts fleshed out to indicate otherwise. And I think for purposes of today and the posture of the case, the posture of the petition, we have to assume that for purposes of today. We have to assume what? That he is dependent because that was in their petition and it was a judgment on the pleadings. Okay. In effect, a judgment on the pleadings. But what I'm saying is, assuming all that, then you can't make heads or tails of the later language in the Probate Act provision that talks about granting an award of nine months to support the child in a manner suited to the condition and life of the minor child. Couple that with the fact that we have an emancipated child. In other contexts, in a divorce context where you're talking about child support or educational expenses, emancipation does make a difference. And guess what? The only time courts have said we will award awards for child support or we will extend that obligation is when the child now disabled, was disabled during his minority. That's what the Champaign case says. That's what the Champaign case says. There are other cases and the court can make whatever it wants of this, where a child has been emancipated and then incurs significant medical expenses after the emancipation. And that's the Proctor Hospital case. The court said he is emancipated. We're not going to hold the parents to any legal obligation to the medical expenses of this emancipated child. So there is a consistency in the language that we talked about in his rule. Is there express language as the court has said? No. But there is some, I'll just say, awkwardness in the language. I wonder if there isn't some policy consideration that differs in a state case such as this and, for example, divorce cases as we talked about. Where in this case it's, the other side of the coin is that, well, who, at least for this limited period of time and for this limited amount of money, who should take the hit? Should the father's estate take the hit or should the government take the hit? And I'm just wondering if that enters into it somewhere because it's, the other factor in these cases is that it's someone who is likely to become a public charge. And so when there's money in an estate and this person fathered this child, is there some policy involved here that he should make a contribution or the state should make a contribution before the government has to, before the people have to? And I'm just, you know, I'm not, there's no history that anybody's thrown that at me. I just came up with that. Public charge, that language is in the definition of dependent. Can't get around it. And so I would assume that that is something that is taken into account. I would only say that this isn't in a vacuum and it's not an endless pot of money that's involved. So to the extent that a child's award is awarded, it has an impact. To the extent there is not enough money in the state, it has an impact on the spouse's award. Let's move on to the next one. They say, you know, they say that we're talking about over a million dollars. And, you know, you made an equitable argument. Oh, you know, we've got a remaining family and there's not that much money, et cetera. And they come back and say, you're talking about, I think it was one point something, I forget what it was, one point something, you know, one point something million dollars. And, you know, if there is a child's award, then the financial status of everybody is presented to Judge Riley and he makes a determination as to how much that should be. If it got to the minimum of $10,000. If it got to that point, he would, in his discretion, be allowed to do that. I was just addressing the public charges here. And the question is, who's, all he's getting at, Judge, is who's going to pay the price for helping to maintain the liquidity, the stability of the public coffers. And it's not painless, is all I'm saying. It does affect the spouse to the extent it's paid. In this case, it affects the other surviving children of Raul Mosquera. So they are the ones that are paying the price. That's all I can tell the court. I mean, it's not some baseless have Northern Trust write a check kind of an equation. It does make a difference to the offspring who survive him. It does make a difference to the spouse, financially. In terms of the insurance issue, I don't want to repeat what the questions were that both the Justices came up with the first go around, but that's exactly the way we have phrased it in our response brief. Schwoz is the case. Because of the obvious importance that should be given to that specific term, minor child or minor children. The whole award consent judgment that's before the court from the 93 Maryland divorce is replete with these references to minor child. It does refer, by the way, to child or children in one particular part when it's talking about child support. But other than that, it talks about minor child, minor child, minor children. Schwoz says that has significance. Is the language in this case slightly different than Schwoz? Schwoz, I'm sorry. Absolutely. Schwoz is a little bit more clear. But as we said in our brief, if you read Schwoz in connection with the later case of Perkins, where they come up with some language that is nowhere near what we're confronted with today, but they say if they had, if the parties has intended to have some restriction on the time period in which this obligation would apply, they could have, like as in Schwoz, added some language that says minor children. And I think that was emphasized in the Perkins opinion. Here's what could have taken place if they wanted, here's what could have been included had they wanted to be specific, referring to Schwoz and the exact language. How about if you just say minor child instead of just the way you phrased it in Perkins? It would have made a difference. It would have indicated an intent. And I don't see that they effectively get around that. And to the Court's other question related to Sellards, to me, that's an even stronger case for us because you have two portions of a phrase, of a paragraph. In the upper portion you're talking about children being irrevocable beneficiaries. In the latter part when you're talking about certain medical and type expenses, you're talking to minor children. Of course there's a difference. Just in that whole, just in that single paragraph you're saying there must be a different reason why you refer to children in the upper and minor children in the lower. We're not going to impose any kind of, it's only during the minority requirement in the upper part having to do with the insurance. That's our case, basically. I mean, they're saying we are the same as Sellards. We're saying, no you're not. You're the exact opposite of Sellards. The use of the word children in Sellards is what won the day for that. Here, in our case, it's all over the place as minor children. The Court had asked a question about, well, how does that fly with the college educational expenses? All I can say that's the only instance where you could even say that it all is incongruous with minor children as minor children no matter what you say. It's bad drafting on the attorney's part. And you can have children who are minority during their college years where that would plausibly have some application. So, I don't think their reliance on Sellards is completely misplaced. I think that's a good question on our behalf. In terms of whether it was available through the employment decision. When we interpret a contract, are we supposed to look at the contract as a whole? Absolutely. And interpret it so that all of its provisions make sense? Absolutely. And so, can you avoid that concept by just saying, well, this is an error made by the draftsman when it comes to college expenses? Or can we take from that, that in this particular instance, since we can assume that they're not minors when they go to college, that they're specifically pointing out two specific children when they say they're minor children? I mean, it's always easy to say, well, that's the draftsman's error. But the law requires us to interpret the document as a whole. I agree with the Court. And it still remains a draftsman error for the following reason. That in the earlier part where they're talking about visitation is for the minor children. Who will the minor children live with? None of that would make any sense if you meant of course it applies after their majority. It has to apply during the period of their minority. It has a very specific, as to those particular items, it has a very specific. You can't say the minor children, a majority, a person of the age of majority shall live with his mother. That makes no sense. You can't say that the child support obligation of the father applies once he reaches majority. It has a very specific meaning in those particular instance judged. And it can have the same specific meaning as to the college expenses. It's just more of a sliver, I would submit to the Court. It can be done consistently. And in terms of whether this was available through the decedent's employment imprecise language, absolutely. But to me the kicker is if the corporation that that they're saying in their claim was the employing entity, if that employing entity wasn't formed until 1999, which was one of the attachments to the 2619 motion, how can you say that then insurance procured in 1998 a year earlier was available to him through his employment? That doesn't make sense. And there is no case on either side as to what difference does it make in terms of who if a minor amount of the premium payments are made by the corporation, Dr. Mosquera's corporation as opposed to an individual or some other party. I would just submit that in the scheme of the 10 year payment of premiums, roughly, actually it was a little bit more than 10 year payments of premiums, there's only a sliver that in an hour of need were paid by the corporation. And that should not equate to, of course this was done and it was available through his employer. Anything further? Nothing further, Judge. We just ask that you affirm the lower court's ruling on both the child's award and the dismissal of the claim. Alright, thank you. Mr. Arena, brief rebuttal. Judge, counsel concedes that there is no other authority other than the probate act as far as the child's award and what the requirements of the child's award are. It would be illogical to say that the statute provides for an adult dependent child award, but then say it has to be a minor who is adjudicated disabled. That's judicial legislation that's adding language into the statute that doesn't exist. And I believe that's exactly what Judge Riley did. During the arguments transfer perplexed. Judge Riley told me probate court is widows and orphans court and adults don't get relief in adult children, does not get relief. That's inaccurate. If that is Judge Riley's practice, that practice on this specific point is in error and that's why we're here today. There was a question to counsel as to whether Fernando is defined as disabled. In the petitions for letters of administration, the administrator identified Fernando as a disabled adult son of the decedent who does not reside with her. That's in the record, volume one, page C0005. The Degner court said adult child  but receive social security, childhood, disability benefits is a dependent for the purpose of the dependent child award. In addition, there was some discussion with counsel about emancipation and what constitutes that. I believe that those cases cited by the administrator and that discussion is relevant to what we have going on today. And a similar discussion occurred in the Degner case and the Degner court said reference to the mental health code or the dictionary to define dependent has no bearing on the probate act. The probate act speaks for itself. In regard to the constructive trust in the life insurance issue, we're kind of in between the Swash court and the IDS court and the only difference with IDS is the reference to minor child. And as I stated previously, Swash doesn't set forth a black line rule of law. If it says minor child, it means it terminates out of emancipation. The court did not hold that. What the court did is said we need to look at the divorce decree to determine what the intent of the parties is. And that exercise didn't happen here. Judge Riley said they're not minors at the time of the decedent's death, they don't get relief. And that's inaccurate. What the court needed to do is look at the divorce decree as a whole and hear the language dealing with providing for college educational expenses of the minor children would be rendered meaningless if the court interpreted the phrase minor children to limit those benefits to minority. The parties here were just using it as an adjective to define two children from the second marriage as opposed to three children, one being from the first marriage. As for the issue of the insurance being available from the medical practice, we know, or at least there's an unsupported exhibit in the motion to dismiss that says that the medical practice corporation was formed after the life insurance policy was obtained. We don't know when from this record Dr. Mascara started practicing medicine. And Dr. Mascara is the sole individual with the ability to control and enforce his obligations to obtain the life insurance policy. Again, we're dealing with an equitable situation here. He was contractually obligated by the divorce decree to provide for those benefits. It would be unjust to allow him to circumvent the obligation by saying, oh, I've got these policies in my own name as opposed to through my employer. He was his employer. He was his sole practitioner. If there are no further questions, I've concluded. All right. The matter was well-argued and well-briefed. We'll take it under advisement. We're going to call the next case, and we will take a short recess because we're changing themes.